UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BANK OF AMERICA, NATIONAL
ASSOCIATION,

                      Plaintiff,

      -against-

THOMAS DEXTER, JR.,

                      Defendant.

Civil Action No.
12-CV-4470 (LAK)

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR STAY ACTION AND/OR TO COMPEL ARBITRATION

LIVINGSTON HOWE LLP
Attorneys for Defendant
747 Third Avenue, 20th Floor
New York, New York 10017
Tel. (212) 986-7887

## TABLE OF CONTENTS

| | Page |
|---|---|
| Table of Authorities | ii |
| Preliminary Statement | 1 |
| Statement of Facts | 1 |

ARGUMENT

I. BANK OF AMERICA IS BOUND TO ARBITRATE THIS DISPUTE AND SHOULD BE COMPELLED TO DO SO ............................................................ 2

    A. New Jersey Law Applies ............................................................................ 3

    B. New Jersey Contract Law Requires Enforcement of the Arbitration Agreement Against the Bank ...................................................................... 4

    C. The FAA Requires That This Action be Stayed or Dismissed .................. 7

II. IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION UNTIL THE RESOLUTION OF THE PENDING ARBITRATION BETWEEN MERRILL LYNCH AND THE DEFENDANT ............................................. 8

CONCLUSION ........................................................................................................ 10

TABLE OF AUTHORITIES

**CASES**

*Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560 (App. Div. 2007) .......................................... 5

*Angrisani v. Fin. Tech. Ventures, L.P.*,
402 N.J. Super. 138 (App. Div. 2008) ........................................................................................ 5

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624, 129 S. Ct. 1896 (2009) ..................................................................................... 3, 4

*Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91 (S.D.N.Y. 1997). ............................................ 8

*Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292 (3d Cir. 2004) .................................................. 6

*Bruno v. Mark MaGrann Assoc.*, 388 N.J. Super. 539 (App. Div. 2006) ...................................... 4

*E.I. DuPont de Nemours & Co. v. Rhone
Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001) .............................. 6

*Eastern Fish Co. v. South Pacific Shipping Co.*
105 F. Supp.2d 234 (S.D.N.Y. 2000) ......................................................................................... 8

*Epix Holdings Corp. v. Marsh & McLennan Cos.*,
410 N.J. Super. 453 (App. Div. 2009) .............................................................................. 4, 5, 6, 7

*Freeman v. Complex Computing Co.*,
931 F. Supp. 1115 (S.D.N.Y. 1996), *aff'd in part,
remanded on other grounds*, 119 F.3d 1044 (2d Cir. 1997) ...................................................... 8

*Goldstein v. Time Warner New York City
Cable Group*, 3 F. Supp.2d 423 (S.D.N.Y. 1998) ...................................................................... 9

*Haskins v. First American Title Ins. Co.*,
2012 WL 1599998 (D.N.J. May 4, 2012) ................................................................................ 6, 7

*In re Lehman Brothers Sec. & ERISA Lit.*,
706 F. Supp.2d 552 (S.D.N.Y. 2010) ......................................................................................... 2

*Janmort Leasing, Inc. v. Econo-car Int'l, Inc.*,
475 F. Supp. 1282 (E.D.N.Y. 1979) ........................................................................................... 8

*Jansen v. Salomon Smith Barney, Inc.*,
342 N.J. Super. 254 (App. Div.), *cert. denied*, 170 N.J. 205 (2001) ........................................ 4

*Maritima de Ecologia, S.A. v. Sealion Shipping Ltd.*
  2011 WL 1465744 (S.D.N.Y. April 15, 2011) .................................................................. 8

*MAT Movies & Television Prods. GmbH v. RHI
  Entertainment Distribution, LLC*, 752 F. Supp.2d 373 (S.D.N.Y.2010) ............................... 3, 8

*Mehler v. Terminix Int'l Co.*, 205 F.3d 44 (2d Cir. 2000) ........................................................ 3

*Merrill Lynch Int'l Finance v. Donaldson*,
  27 Misc.3d 391, 895 N.Y.S.2d 698 (Sup. Ct. N.Y. Co. 2010) ......................................... 5, 7

*Milgrim v. Backroads, Inc.*, 142 F. Supp.2d 471 (S.D.N.Y. 2001) ........................................... 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614, 105 S. Ct. 3346 (1985) ............................................................................. 2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1, 103 S. Ct. 927 (1983) .................................................................................. 9

*Singer v. Commodities Corp.*, 292 N.J. Super. 391 (App. Div. 1996) ...................................... 5

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
  10 F.3d 753 (11th Cir. 1993), *cert. denied*, 513 U.S. 869, 115 S. Ct. 190 (1994) ............... 5

*Thomson-CSF, S.A. v. American Arbitration Ass'n*,
  64 F.3d 773 (2d Cir. 1995) ............................................................................................. 3

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997) ............................................. 8, 9

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ...................................................................... 2

Federal Arbitration Act, 9 U.S.C. § 3 .............................................................................. 7, 8

Federal Arbitration Act, 9 U.S.C. § 4 ................................................................................. 7

**OTHER AUTHORITIES**

FINRA Code of Arbitration Procedure for Industry Disputes § 13200(a) ................................ 2

**Preliminary Statement**

Defendant Thomas Dexter, Jr. submits this memorandum of law in support of his motion for an order to dismiss this action and compel arbitration of the claims asserted in plaintiff's Amended Complaint before the Financial Industry Regulatory Authority ("FINRA"), where related claims brought by plaintiff's affiliate, Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") are already proceeding, or to stay the action pending the outcome of that arbitration.

**Statement of Facts**

The facts relevant to this motion are fully set forth in the accompanying Declaration in Support of Defendant's Motion to Dismiss or Stay Action and/or to Compel Arbitration ("Dexter Decl."), to which the Court is respectfully referred.

In this action, plaintiff, Bank of America, National Association ("Bank of America" or the "Bank"), asserts claims based on a line of credit, styled a "Loan Management Account" or "LMA," that defendant's employer, Merrill Lynch, arranged for him in connection with his employment. Merrill Lynch is an affiliate of the Bank and employed defendant as a Financial Advisor, with the title "Senior Vice President – Investments" in Merrill Lynch's Private Banking & Investment Group. Merrill Lynch staff provided defendant with the paperwork for the LMA, which bore the logos of Merrill Lynch and the Bank, arranged the LMA, and administered the LMA through an account maintained in the Private Banking & Investment Group where defendant was employed. A Merrill Lynch officer signed the loan applications, and two Merrill Lynch securities accounts secured the LMA.

Plaintiff's claims in this action are part and parcel of defendant's employment dispute with Merrill Lynch. In May 2012, Merrill Lynch terminated defendant's employment,

1

purportedly for cause, in an effort to seize the client base built up over the years by defendant and his partner and to inflict sufficient economic and reputational damage on defendant to keep him from returning to the securities industry. Merrill Lynch thus precipitated plaintiff's calling of the LMA loan, which occurred within days of defendant's termination. The dispute between defendant and Merrill Lynch is the subject of an arbitration commenced by Merrill Lynch before FINRA, whose rules mandate arbitration of employment disputes between member organizations such as Merrill Lynch and associated persons such as defendant. Defendant will file an answer and counterclaims in the arbitration shortly. The FINRA arbitrators will determine, among other things, whether the circumstances surrounding the LMA loan constitute "cause" for defendant's termination.

## ARGUMENT

### I. BANK OF AMERICA IS BOUND TO ARBITRATE THIS DISPUTE AND SHOULD BE COMPELLED TO DO SO

It is well-established that the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), "established an 'emphatic federal policy in favor of arbitral dispute resolution.'" *In re Lehman Brothers Sec. & ERISA Lit.*, 706 F. Supp.2d 552, 557 (S.D.N.Y. 2010) (Kaplan, J.), quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 3356 (1985).

It is equally well-established that disputes between a member firm of FINRA and a person associated with such firm are subject to mandatory arbitration pursuant to Section 13200(a) of the FINRA Code of Arbitration Procedure for Industry Disputes.[1] In connection with commencing his employment with Merrill Lynch, defendant agreed to arbitrate all disputes with the firm relating to his employment. *See* Dexter Decl. ¶ 2. Merrill Lynch has already

---

[1] The FINRA Code of Arbitration Procedure for Industry Disputes is available online at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4193.

initiated a FINRA arbitration against the defendant, seeking to recover the unamortized balance on a forgivable loan granted to Mr. Dexter in connection with his agreement to accept employment and to bring his substantial book of business to Merrill Lynch.

The obligation to arbitrate does not attach only to one who has signed a written arbitration agreement. "[A] nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (citation and internal punctuation omitted). Plaintiff Bank of America and its affiliate Merrill Lynch should be well aware of that principle. Merrill Lynch was recently fined $1 million by FINRA for trying to avoid arbitration of claims against its brokers on promissory notes.[2] Merrill Lynch had employed an affiliated entity to make the loans, and then claimed that the affiliate was not bound by FINRA rules.

As shown below, traditional principles of contract and agency law require Bank of America to arbitrate this dispute.

### A. New Jersey Law Applies

The LMA Agreement, on which plaintiff's claims are founded, provides that it shall be governed by New Jersey law.[3] State contract law governs the issue of a nonsignatory's rights with respect to an arbitration agreement. *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631, 129 S. Ct. 1896, 1902 (2009); *MAT Movies & Television Prods. GmbH v. RHI Entertainment Distribution, LLC,* 752 F. Supp.2d 373, 376 (S.D.N.Y.2010), citing *Mehler v. Terminix Int'l Co.,* 205 F.3d 44, 48 (2d Cir. 2000).

---

[2] See http://www.finra.org/Newsroom/NewsReleases/2012/P125455.

[3] Paragraph 12 of the LMA Agreement states, in relevant part, that "[t]his Agreement shall be governed by and interpreted under federal law and, to the extent not preempted, the internal laws of the State of New Jersey (without regard to any choice of law rule that would result in the selection of any law other than federal law or the internal laws of the State of New Jersey) . . . ."

3

Like federal law, New Jersey law favors arbitration:

> New Jersey law comports with its federal counterpart in striving to enforce arbitration agreements. An agreement relating to arbitration should thus be read liberally to find arbitrability if reasonably possible. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.

*Jansen v. Salomon Smith Barney, Inc.,* 342 N.J. Super. 254, 257-58 (App. Div.), *cert. denied,* 170 N.J. 205 (2001) (citations and internal punctuation omitted).

### B.   New Jersey Contract Law Requires Enforcement of the Arbitration Agreement Against the Bank

"[T]raditional principles of state law . . . 'allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Epix Holdings Corp. v. Marsh & McLennan Cos.,* 410 N.J. Super. 453, 463 (App. Div. 2009), quoting *Arthur Andersen LLP v. Carlisle,* 556 U.S. at 631, 129 S. Ct. at 1902. The relevant principle applicable to this case is equitable estoppel and under this concept, plaintiff's claims should be arbitrated.

A non-signatory to an arbitration agreement may be compelled to arbitrate on the basis of equitable estoppel. "The estoppel inquiry is fact specific, but usually involves an analysis of the connection between the claim, the arbitration agreement and the parties." *Epix,* 410 N.J. Super. at 463. "[T]he issues to be litigated [must be] intertwined with [the] agreement containing [the] arbitration clause." *Bruno v. Mark MaGrann Assoc.,* 388 N.J. Super. 539, 548 (App. Div. 2006) (homeowners who have arbitration agreement with general contractor must arbitrate their claims against subcontractors for defective work).

4

If a court does not consider the "inextricable connectivity" between claims and agreement dispositive of the issue, the court also may consider whether the "nonsignatory to the contract is closely aligned to a contracting party, such as a parent or successor corporation, or enjoys a principal-agent relationship therewith." *Epix*, 410 N.J. Super. at 466 (citations omitted); *id.* at 467 ("AIG, as parent corporation, is clearly aligned to its wholly-owned subsidiary National Union."). *See also Singer v. Commodities Corp.*, 292 N.J. Super. 391, 411-15 (App. Div. 1996) (securities broker who signed employment agreement requiring arbitration could be compelled to arbitrate employment-related dispute with employer's successor, employer's parent company); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993), *cert. denied*, 513 U.S. 869, 115 S. Ct. 190 (1994) ("[W]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.") (citation and internal punctuation omitted), cited with approval in *Angrisani v. Fin. Tech. Ventures, L.P.*, 402 N.J. Super. 138, 154-55 (App. Div. 2008); *Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560, 569-70 (App. Div. 2007) (investor who has arbitration agreement with subsidiary Deutsche Bank Securities, Inc. must arbitrate claims against its parent, Deutsche Bank AG, because subsidiary was acting as parent's agent).

Another circumstance favoring estoppel is when "the non-signatory and signatory have conspired together." *Epix*, 410 N.J. Super. at 467 (citation omitted). *Cf. Merrill Lynch Int'l Finance v. Donaldson*, 27 Misc.3d 391, 396, 895 N.Y.S.2d 698, 703 (Sup. Ct. N.Y. Co. 2010) ("One circumstance that warrants estoppel is when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted conduct by both the nonsignatory and the other signatory to the contract.") (citation omitted).

Another factor warranting estoppel is "when the non-signatory knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001) (citation omitted). Under this theory, the non-signatory is bound if it "embraces the agreement." *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 295 (3d Cir. 2004). "A non-signatory can embrace a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Haskins v. First American Title Ins. Co.*, 2012 WL 1599998, *5 (D.N.J. May 4, 2012) (citation and internal punctuation omitted).

All of these factors militate in favor of estoppel. First, the Bank's claims, Merrill Lynch, and defendant's employment agreement and dispute with Merrill Lynch are intertwined. Both of the Bank's claims rest on the LMA, which was integral to defendant's employment with the Bank's affiliate, Merrill Lynch. Merrill Lynch staff at Dexter's workplace furnished the paperwork for the LMA and arranged the LMA, secured it with Merrill Lynch brokerage accounts, and then administered it through an account in Merrill Lynch's Private Banking and Investment Group where Dexter is employed. The LMA applications show, at the top of the first page, the logos of both Merrill Lynch and Bank of America. Both LMA applications were signed by a Merrill Lynch officer.

Further, Merrill Lynch precipitated the calling of the LMA loan by the Bank by terminating defendant's employment, and Merrill Lynch has alleged that circumstances surrounding the LMA loan constitute "cause" for such termination. Dexter Decl. ¶ 23. Given the "inextricable connectivity" between the claims and parties in this action and the claims and

6

parties in the arbitration, *Epix,* 410 N.J. Super. at 466, the Bank should be compelled to arbitrate its claims.

By the same token, this is also a case in which the "nonsignatory to the contract is closely aligned to a contracting party . . . or enjoys a principal-agent relationship therewith." *Epix,* 410 N.J. Super. at 466. Nonsignatory Bank of America is an affiliate of contracting party Merrill Lynch, and clearly there is also an agency relationship between them.

As the foregoing makes clear, this is also a case involving "interdependent and concerted conduct by both the nonsignatory and the other signatory to the contract." *Donaldson,* 27 Misc.3d at 396, 895 N.Y.S.2d at 703 (citation omitted).

Finally, there is no question that in furnishing the LMA, the Bank was exploiting defendant's employment agreement with Merrill Lynch. The LMA was incident of defendant's employment; without such employment, defendant would not have obtained the LMA. It therefore can be argued that the Bank has "knowingly [sought] and obtain[ed] direct benefits from" defendant's employment agreement. *Haskins,* 2012 WL 1599998, *5. For all of these reasons, the Bank's claims are part of defendant's employment dispute with Merrill Lynch and should be arbitrated before FINRA in a single proceeding.

C.   **The FAA Requires That This Action be Stayed or Dismissed**

Based on the foregoing authorities, Bank of America should be compelled to arbitrate its disputes with the defendant, and this action should be dismissed or stayed. Under FAA § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [having jurisdiction] . . . for an order directing that such arbitration proceed in the manner provided in such agreement." Under FAA § 3, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on

application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." Although FAA § 3 refers to staying an action where the claims are subject to an arbitration agreement, "courts have the discretion to dismiss – rather than stay – an action when all issues are arbitrable." *MAT Movies*, 752 F. Supp.2d at 376 n.1, citing *Milgrim v. Backroads, Inc.*, 142 F. Supp.2d 471, 476 (S.D.N.Y. 2001); *Eastern Fish Co. v. South Pacific Shipping Co.*, 105 F. Supp.2d 234, 242 (S.D.N.Y. 2000); *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997).

## II.  IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION UNTIL THE RESOLUTION OF THE PENDING ARBITRATION BETWEEN MERRILL LYNCH AND THE DEFENDANT

As this Court has noted, "[d]istrict courts have inherent control over their dockets. They may stay proceedings where the interests of justice or judicial economy thus would be served." *Freeman v. Complex Computing Co.*, 931 F. Supp. 1115, 1124 (S.D.N.Y. 1996) (Kaplan, J.) (citations omitted), *aff'd in part, remanded on other grounds*, 119 F.3d 1044 (2d Cir. 1997). *See also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (district courts "may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants") (citations omitted).

Thus, for example, "federal courts have not hesitated to stay the litigation of nonarbitrable claims until the conclusion of arbitration, provided that economies of time and effort for court and parties can thereby be achieved and that the party seeking the stay can demonstrate that he will not hinder the arbitration, that the arbitration will be concluded within a reasonable time, and that the delay will not work an undue hardship on the party opposing the stay." *Janmort Leasing, Inc. v. Econo-car Int'l, Inc.*, 475 F. Supp. 1282, 1293 (E.D.N.Y. 1979) (citations omitted). "[N]o hard-and-fast rules provide resolution of this discretionary decision."

8

*Maritima de Ecologia, S.A. v. Sealion Shipping Ltd.*, 2011 WL 1465744, *5 (S.D.N.Y. April 15, 2011) (citations and internal punctuation omitted). *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23, 103 S. Ct. 927, 939 n.23 (1983) ("[I]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.") (citations omitted).

Should the Court rule that plaintiff's claims are not subject to arbitration, defendant requests that the Court stay this action until the related FINRA arbitration commenced by Merrill Lynch is concluded, in the interests of justice and to conserve the resources of the parties and the Court. For the reasons stated above, it is clear that the two proceedings involve overlapping issues. *See Goldstein v. Time Warner New York City Cable Group*, 3 F. Supp.2d 423, 437-38 (S.D.N.Y. 1998) (court may stay action "pending resolution of independent proceedings which bear upon the case," even if such proceedings are not "controlling of the action before the court"). Both of Bank of America's causes of action are based on the LMA, which was arranged by Merrill Lynch for defendant because of defendant's employment with Merrill Lynch.

A stay would cause minimal prejudice to Bank of America, whereas the denial of a stay could cause severe harm to the defendant. *See, e.g., WorldCrisa*, 129 F.3d at 76 (staying action pending arbitration where the action "might adversely affect the outcome of [defendant's] arbitration"). The defendant has no intention of impeding the arbitration process and expects the arbitration to conclude within a reasonable time. *See* Dexter Decl. ¶ 3.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court either (1) compel Bank of America to arbitrate its claims and dismiss or stay this action, or (2) stay this action pending the conclusion of the FINRA arbitration brought by Merrill Lynch against the defendant.

Dated: New York, New York
August 8, 2012

                                            LIVINGSTON HOWE LLP

                                            By: /s/ Jeffrey E. Livingston
                                                Jeffrey E. Livingston
                                                David D. Howe
                                                Robert N. Rothberg
                                            Attorneys for Defendants
                                            747 Third Avenue, 20th Floor
                                            New York, New York 10017
                                            Tel. (212) 986-7887