UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BANK OF AMERICA, NATIONAL ASSOCIATION,

Plaintiff,

-against-

THOMAS DEXTER, JR.,

Defendant.

12 CV 4470 (LAK)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO COMPEL ARBITRATION AND FOR A STAY

JOEL A. SIEGEL
Attorney for Plaintiff
217 Broadway, Suite 707
New York, New York 10007
Telephone: (212) 233-6900

# TABLE OF CONTENTS

Page

Table of Authorities.......................................................... ii

Introduction................................................................. 1

Statement of Facts........................................................... 2

Argument:

   I.  BANA'S LMA AGREEMENT CLAIM IS NOT SUBJECT
      TO ARBITRATION................................................ 6

      A.    The LMA Agreement Bars Arbitration Of The
            Claim......................................................... 6

      B.    BANA's Claim Is Not Arbitrable Under Form
            U-4 And FINRA Rules................................... 8

      C.    Principals Of Agency And Estoppel Do Not
            Apply Here................................................... 9

      D.    New York Law Applies To Application Of The
            Employment Agreement.................................. 12

  II. A STAY SHOULD NOT BE GRANTED....................... 15

Conclusion................................................................... 19

Index To Exhibits........................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                                     Page

*Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560
  (App. Div. 2007)........................................................ 13, 15

*Amato v. KPMG, LLP*, 433 F.Supp.2d 460, 485–87
  (M.D.Pa. 2006), *vacated in part on other grounds,*
  2006 WL 2376245 (M.D.Pa.)........................................ 14

*Angrisani v. Financial Technology Ventures*, L.P.,
  402 N.J. Super. 138 (App. Div. 2008)............................. 13

*Aukema v. Chesapeake Appalachia, LLC*, 839 F.Supp.2d
  555 (N.D.N.Y. 2012).................................................... 15

*Arakelian v. Omnicare, Inc.*, 735 F.Supp.2d 22 (S.D.N.Y. 2010).   12

*Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276
  (2d Cir. 2003)............................................................ 14

*Beth Israel Medical Center v. Horizon Blue Cross and Blue
  Shield of New Jersey, Inc.*, 448 F.3d 573 (2d Cir. 2006)...   7

*Bruno v. Mark MaGrann Assoc.*, 388 N.J. Super. 539
  (App. Div. 2006)........................................................ 15

*Deloitte Noraudit A/S v. Deloitte Hasking & Sells, U.S.*,
  9 F.3d 1060 (2d Cir. 1993)........................................... 10

*Epix Holdings Corp. v. Marsh & McLennan Cos.*, 410 N.J.
  Super. 453 (App. Div. 2009)......................................... 13, 14

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386
  (2d Cir. 2001)............................................................ 12

*Freeman v. Complex Computing Co.*, 931 F.Supp. 1115
  (S.D.N.Y. 1996).......................................................... 17

*Frishberg v. Esprit de Corp.*, 778 F.Supp. 793 (S.D.N.Y. 1991)..   13

*Goldstein v. Time Warner New York City Cable Group,*
    3 F.Supp.2d 423 (S.D.N.Y. 1998)................................ 18

*Greenfield v. Phillies Records,* 98 N.Y.2d 562 (2002)................ 7

*In re Lehman Bros. Securities and ERISA Litigation,*
    706 F.Supp.2d 552 (S.D.N.Y. 2010)................................ 9

*Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.,*
    475 F.Supp. 1282 (E.D.N.Y. 1979)................................ 17

*Kampf v. Franklin Life Ins. Co.,* 33 N.J. 36 (1960)................... 7

*Levison v. Weintraub,* 215 N.J. Super. 273 (App. Div.),
    *certif. denied,* 107 N.J. 650 (1987)................................ 7

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group*
    *LLC,* 268 F.3d 58 (2d Cir. 2001)................................ 10

*Maritima De Ecologia, S.A. DE C.V. v. Sealion Shipping*
    *Ltd.,* 2011 WL 1465744 (S.D.N.Y.)................................ 18

*Merrill Lynch Int'l Finance v. Donaldson,* 27 Misc.3d 391
    (Sup. Ct. N.Y. Co. 2010)........................................... 15

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1, 103 S.Ct. 927 (1983)................................ 18

*Schaad v. Susquehanna Capital Group,* 2004 WL 1794481
    (S.D.N.Y.)................................................................ 10

*Sierra Rutile Ltd. v. Katz,* 937 F.2d 743 (2d Cir. 1991)............ 15

*Singer v. Commodities Corp.,* 292 N.J. Super. 391
    (App. Div. 1996)................................................... 14, 15

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith*
    *Cogeneration Int'l, Inc.,* 198 F.3d 88 (2d Cir. 1999)........ 10, 14

*Sunkist Soft Drinks v. Sunkist Growers, Inc.,* 10 F.3d 753
    (11th Cir. 1993), *cert. denied,* 513 U.S. 869,
    115 S.Ct. 190 (1994)............................................. 14, 15

*Thomson-CSF, S.A. v. American Arbitration Association,*
    64 F.3d 773 (2d Cir. 1995).....................................  6, 9, 10

*Tischmann v. ITT/Sheraton Corp.,* 882 F.Supp. 1358
    (S.D.N.Y. 1995)...................................................  13

*Worldcrisa Corp. v. Armstrong,* 129 F.3d 71 (2d Cir. 1997).......  17

*Westmont Development Group v. Township of Haddon,*
    373 Fed.Appx. 310 (3d Cir. 2010)..............................  7

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,*
    84 N.Y.2d 309 (1994)...........................................  12

**STATUTES**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*................................  15

**OTHER AUTHORITIES**

FINRA Code of Arbitration Procedure for Industry Disputes
    § 13100...................................................................  8

FINRA Code of Arbitration Procedure for Industry Disputes
    § 13200...................................................................  8

v

## Introduction

In July 2011 and pursuant to a Loan Management Account Agreement ("LMA Agreement"), defendant Thomas Dexter, Jr. ("Dexter"), was granted a line of credit by plaintiff Bank of America, N.A. ("BANA"). The indebtedness under the LMA Agreement, which is payable on demand, currently stands at $1,965,951.96. Dexter sought the line of credit for personal purposes while he was employed as a Senior Vice-President and Financial Advisor at Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS").

Dexter is currently defending an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA") brought by MLPFS for monies owed in relation to termination of Dexter's employment for cause under his 2008 employment agreement ("Employment Agreement"). Dexter seeks to compel BANA to arbitrate its LMA Agreement claim for nonpayment on the personal loan in the same FINRA proceeding. BANA is not a member of FINRA, and this case does not involve "business activities" covered by FINRA's rules of arbitration. Furthermore, the LMA Agreement provides all claims by or against BANA thereunder "shall be resolved in court by a judge."

BANA's claim for nonpayment of indebtedness under the LMA Agreement is unrelated to the Employment Agreement at issue in the FINRA arbitration. While BANA and MLPFS are both holdings of Bank of America Corporation ("BAC"), they were not affiliated companies when the Employment Agreement was entered into. Neither is a subsidiary or successor to the other, and there are no facts suggesting BA-

1

NA directly benefited from or assumed the Employment Agreement.  For the reasons detailed below, Dexter's motion to compel arbitration should be denied.

Dexter also requests a stay of the action pursuant to the court's inherent power to control its docket.  Dexter seeks the stay in the interests of justice and to conserve the parties' resources, until the FINRA arbitration is resolved.  But the FINRA arbitration and this action are separate and distinct and will not affect each other.  A stay here would disadvantage BANA as against other creditors, and it would not conserve resources.  As detailed below, Dexter fails to meet his burden to show grounds for a stay.  This aspect of the motion should also be denied.

## Statement of Facts

### The Loan Management Account Agreement

On July 25, 2011, Dexter and BANA entered into the LMA Agreement under which BANA extended Dexter a loan in the form of a credit facility. (Declaration of Edward M. Han, sworn to September 13, 2012 ("Han Dec."), ¶ 3.); Exs. A (Application) and B (LMA Agreement) to Han Dec. (the Application and the LMA Agreement are hereafter referred to collectively as the "Loan Documents"))[1]

Dexter sought the credit facility for personal purposes. (Ex. A, § I.)

The Loan Documents provide that the credit facility is payable by Dexter on demand by BANA. (Ex. A, § III(3); Ex. B, §§ 1 and 5.)

The Loan Documents further provide for the credit facility to be collateralized

---

[1]  Unless stated otherwise, references to exhibits are to those attached to the Han Dec.

by a pledged securities account. (Ex. A, § II, Ex. B, § 6.) Specifically, Dexter's credit fa-
cility was collateralized by his own MLPFS securities account. (Ex. A, § I.) MLPFS is a
party to the LMA Agreement as custodian of the pledged securities account. (Ex. B, §
2.)

On August 2, 2011, Dexter's brother-in-law Michael G. Burton ("''Burton")
pledged his MLPFS securities account as additional collateral under Dexter's LMA
Agreement. (Ex. C. ("Burton's Pledgor Application").)  Under a Rider executed at the
same time as Burton's Pledgor Application, the Maximum Amount of the credit facility
was capped at $200,000. (Ex. D.)  The Rider was signed by Dexter, Burton, and a BA-
NA officer. (Ex. D.)

Ordinarily, a borrower is prevented from obtaining loan advances on a credit
facility beyond the agreed-upon Maximum Amount by controls entered in BANA's com-
puter systems, which automatically prevent loans from being drawn beyond the cap.
(Han Dec., ¶ 9.) However, in this case there was error. (*Id.*) The agreed-upon $200,000
Maximum Amount was not entered in BANA's systems. (*Id.*) Without the cap in place,
Dexter was able to take advances beyond $200,000, because Burton's securities account
had assets in excess of $2.8 million. (*Id.*)

During the period from August 3, 2011 to October 31, 2011, Dexter obtained
seventeen (17) advances on the credit facility totaling $2,871,500. (Han Dec., ¶ 10.)

The credit facility was later frozen to prevent further advances. (Han Dec., ¶
11.)

During the period from August 31, 2011 to February 22, 2012, Dexter made

3

eleven (11) credit facility payments to BANA totaling $970,350. (Han Dec., ¶ 12.)

As of May 31, 2012, the outstanding amount owed under the Loan Documents stood at $1,947,478.01, including loan principal and interest. (Han Dec., ¶ 13.)

On May 31, 2012, BANA sent Dexter a written demand for repayment of all Obligations under the LMA Agreement by June 5, 2012. (Ex. E.) Dexter failed to make any payment in response to the demand. (Han Dec., ¶ 15.)

The failure by Dexter to pay upon demand any principal and interest on any credit facility advance constitutes a Remedy Event under the LMA Agreement, entitling BANA to immediate payment from Dexter of all Obligations thereunder. (Ex. B, § 7, 1st ¶.)

As of September 13, 2012, Dexter's indebtedness to BANA under the LMA Agreement stands at $1,965,951.96. (Han Dec., ¶ 17.)

This action was commenced on June 7, 2012. (ECF Docket No. 1.) By its complaint, BANA seeks recovery of the outstanding indebtedness, accruing interest, and BANA's costs of collection, including reasonable attorneys' fees, which are specifically recoverable under the LMA Agreement. (Ex. B, § 9, 1st ¶.)

While specifically not modifying the existing arbitration agreement between Dexter and MLPFS, the LMA Agreement expressly provides that "any claim by or against the Bank [BANA] relating to this Agreement (a 'Claim') shall be resolved in a court by a judge without a jury…" (Ex. B, § 9, 1st ¶ and § 12 at p. 12, last ¶.) BANA is not a signatory to any arbitration agreement with Dexter. (Han Dec., ¶ 19.)

<u>Dexter's Employment With MLPFS</u>

At the time he entered into the LMA Agreement, Dexter was employed as a Senior Vice-President and Financial Advisor at MLPFS. (Han Dec., ¶ 20.) Dexter's employment at MLPFS began in 2008. (*Id.*) MLPFS is a Delaware corporation with its principal place of business in New York. (*Id.*)

BANA and MLPFS are both indirectly owned by Bank of America Corporation ("BAC"). (Han Dec., ¶ 21.) MLPFS became a holding of BAC in 2009. (Han Dec., ¶ 21.) Neither MLPFS nor BANA is a subsidiary or successor to the other. (*Id.*) MLPFS is a member of the Financial Industry Regulatory Authority ("FINRA"), the independent securities industry regulator. (Han Dec., ¶ 22.) BANA is not a member of FINRA. (*Id.*) BANA is a nationally chartered bank regulated by the Office of the Comptroller of Currency, Department of Treasury. (*Id.*)

On or about May 3, 2012, Dexter's employment with MLPFS was terminated for cause. (Han Dec., ¶ 23.) Following termination of Dexter's employment, MLPFS commenced an arbitration proceeding before FINRA to recover monies loaned by MLPFS to Dexter in 2008 under his employment agreement ("Employment Agreement"). (Han Dec., ¶ 24.)

The LMA Agreement is unrelated to the Employment Agreement. (Han Dec., ¶ 25.) The personal line of credit granted to Dexter by BANA in 2011 is separate and independent from the compensation arrangement in the 2008 Employment Agreement, which Dexter describes in paragraphs 9 – 16 of his Declaration in support of the instant motion (ECF Docket No. 7-1 ("Dexter Dec."). (Han Dec., ¶ 25.) When Dexter en-

tered into the Employment Agreement, MLPFS and BANA were not affiliated. (Han Dec., ¶ 21.)

Dexter's Motion

Under the Federal Arbitration Act (9 U.S.C. § 1 et seq.), Dexter seeks to compel BANA to arbitrate before FINRA its claim under the LMA Agreement. But Dexter does not attach to his motion a signed arbitration agreement, nor does he provide the Employment Agreement cited in the Dexter Dec. at paragraphs 11 – 12 and 26.

In his Declaration, Dexter concedes he initiated the process for the LMA Agreement in 2011 to "deal with personal financial needs." (Dexter Dec., ¶ 18.) There is no suggestion the LMA Agreement relates or is connected to the Employment Agreement, or that it was a form of compensation, i.e., the business matters at issue in his FINRA arbitration with MLPFS.

In his Declaration, Dexter does not indicate he has a defense to BANA's claim for repayment of the indebtedness owed under the LMA Agreement.

Argument

I.   BANA'S LMA AGREEMENT CLAIM
     IS NOT SUBJECT TO ARBITRATION

A. The LMA Agreement Bars Arbitration Of The Claim

Arbitration is "contractual by nature," and a party cannot be forced to submit to arbitration if it has not agreed to arbitrate. *Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 776 (2d Cir. 1995).

In this case, Dexter concedes there is no valid agreement to arbitrate be-

6

tween himself and BANA. But Dexter fails to alert the Court to the mandatory terms of the LMA Agreement which specifically require that the claim in this case be resolved in court by a judge. (Ex. B, § 9, 1st ¶.) This requirement is reinforced by the provision in the LMA Agreement indicating it does not modify any arbitration agreement between Dexter and MLPFS. (Ex. B, § 12, p. 12, last ¶.) Under the unambiguous controlling language in the LMA Agreement, Dexter's motion to compel arbitration of BANA's LMA Agreement claim must be denied. *See Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 580 (2d Cir. 2006) (court must enforce contract provisions clearly expressing the intent of the parties); *Greenfield v. Phillies Records*, 98 N.Y.2d 562, 569 (2002) (written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms); *Westmont Development Group v. Township of Haddon*, 373 Fed.Appx. 310, 316 (3d Cir. 2010) (where the terms of a contract are clear and unambiguous, courts enforce those terms as written), *citing Levison v. Weintraub,* 215 N.J. Super. 273, 276 (App. Div.), *certif. denied,* 107 N.J. 650 (1987) (*citing Kampf v. Franklin Life Ins. Co.,* 33 N.J. 36, 43 (1960) (ruling that "it is the function of a court to enforce [a contract] as written and not to make a better contract for either of the parties")).[2]

---

[2] New Jersey law is cited here in addition to New York law because Dexter argues that New Jersey law applies for purposes of determining the motion to compel arbitration. (ECF Docket No. 7-4 ("Dexter Memo"), pps. 3 – 4.) However, as detailed on pages 12 – 13 of this Memorandum of Law, it is New York law which applies because the arbitration agreement at issue here is not the LMA Agreement, it is the Employment Agreement and the FINRA Form U-4, which were entered into in relation to Dexter's employment with MLPFS in New York.

B. <u>BANA's Claim Is Not Arbitrable Under Form U-4 And FINRA Rules</u>

To support his motion, Dexter relies on the arbitration provision in the FINRA Form U-4 (Uniform Application for Securities Industry Registration or Transfer). (Dexter Dec., ¶ 2.) Attached to this Memorandum as Ex. A is the current version of the FINRA Form U-4, which contains the arbitration provision on page 15, at ¶ 5.[3] Presumably, this is the same or similar provision to the one in the Form U-4 Dexter states he signed in 2008 when he began employment with MLPFS.  It states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SRO's ["Self Regulatory Organizations"] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Under FINRA Rule 13200, a dispute must be arbitrated if it "arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons."  A copy of this Rule is attached to this Memorandum as Ex. B.[4]

BANA is not Dexter's firm, nor is it one of the SROs listed in Section 4 of the

---

[3]  The form is available on the internet at:
http://www.finra.org/industry/compliance/registration/crd/filingguidance/p005235.
This form is dated May 2009.  A copy of the version of the form in effect in 2008 (when Dexter commenced employment at MLPFS) could not be located.

[4]  Under FINRA Rule 13100(r), an Associated Person is a natural person and not an entity.  A copy of this Rule is attached as part of Ex. B to this Memorandum.

Form U-4.[5] BANA is also not a Member or Associated Person of FINRA. Further, the claim here is for nonpayment on a loan Dexter took for "personal financial needs" and does not arise out of his business activities with a FINRA member. Thus, BANA's claim for nonpayment under the LMA Agreement does not fall within the confines of the arbitration agreement Dexter bases his motion on, and does not fall within the confines of FINRA rules for arbitration. For these additional reasons, the motion to compel arbitration should be denied. *See In re Lehman Bros. Securities and ERISA Litigation*, 706 F.Supp.2d 552, 561 (S.D.N.Y. 2010) (matter which is not in connection with business of FINRA member is not arbitrable under arbitration provisions of FINRA rules).

C. Principles Of Agency And Estoppel Do Not Apply Here

There are five theories for "binding non-signatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 777 (2d Cir. 1995). Dexter argues that principles of agency and estoppel require arbitration of BANA's claim for nonpayment under the LMA Agreement. (Dexter Memo, pps. 4 – 8.) As detailed below, Dexter's arguments are without merit.

While courts favor arbitration, the Second Circuit has stated that a "court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party..."

---

[5] Section 4 of the Form U-4 is at pps. 3 – 4 of Ex. A attached to this Memorandum.

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 97 (2d Cir. 1999).  The mere fact of a non-signatory's affiliation with a signatory will not suffice to estop the non-signatory from avoiding arbitration, no matter how close the affiliation is. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 62 (2d Cir. 2001).

A non-signatory to an arbitration agreement can be compelled to arbitrate only where the non-signatory knowingly directly benefited from the arbitration agreement. *Thomson-CSF, S.A. v. American Arbitration Association,* 64 F.3d at 779.  The standard was articulated in *Schaad v. Susquehanna Capital Group,* 2004 WL 1794481, *5 (S.D.N.Y.), as follows:

> Under the theory of estoppel, a corporation "knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement." *Thomson,* 64 F. 3d at 778. The Second Circuit has held that "where a company 'knowingly accepted the benefits' of an agreement with an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause." *MAG Portfolio Consult v. Merlin Biomed Group,* 268 F.3d 58, 61 (2d Cir.2001) (quoting *Deloitte Noraudit A/S v. Deloitte Hasking & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir.1993)). "The benefits must be direct-which is to say, flowing directly from the agreement." *Id.* (citing *Thomson,* 64 F. 3d at 779). An indirect benefit flowing from the agreement, where the "nonsignatory exploits the contractual relation of the parties to an agreement but does not exploit (and thereby assume) the agreement itself," is not a sufficient basis for estopping a nonsignatory from avoiding arbitration. *Id.*

Dexter's agency and estoppel argument is based on the mistaken assertions that BANA's LMA Agreement claim is intertwined with the Employment Agreement issues pending before FINRA, and that BANA somehow embraced, exploited and benefited from Dexter's employment with MLPFS. (Dexter Memo, pps. 4 - 8.)  This argu-

ment ignores the distinction between indirect and direct benefits articulated by the Second Circuit. While BANA and MLPFS are affiliated and while BANA may have benefited from Dexter's relationship with MLPFS (e.g., as custodian of the collateral for the line of credit), there is no suggestion BANA directly benefited from or assumed the Employment Agreement or the Form U-4 which contains the arbitration provision.[6] The Employment Agreement and the Form U-4 have nothing to do with this action. The credit line at issue in this action was personal to Dexter. It was not part of his employment with MLPFS, and is wholly unrelated to the compensation issues to be heard at the FINRA arbitration.

Dexter also argues that BANA's claim in this action and the FINRA arbitration are intertwined because both claims "rest" on the LMA Agreement. (Dexter Memo, at p. 6.) This is an attempt by Dexter to muddy the waters. In this action, the only issue is Dexter's nonpayment under the LMA Agreement, to which Dexter has not stated a defense. In the FINRA arbitration, Dexter's misuse of the line of credit (borrowing far beyond the credit limit) is an issue because it contributed to the termination of his employment at MLPFS. These issues are distinct and do not overlap.

For the above reasons, and under Second Circuit authority, BANA cannot be

---

[6] At pages 6 - 7 of the Dexter Memo, Dexter states that MLPFS staff arranged and administered the LMA Agreement, that the loan application was signed by an MLPFS officer, and that the MLPFS logo appears on the Application. But these facts are not germane to the legal standard for estoppel, as they do not establish BANA directly benefited from or assumed the arbitration agreement.

compelled to arbitrate under the Employment Agreement and the Form U-4.

D. <u>New York Law Applies To Application Of The Employment Agreement</u>

   Dexter is mistaken about application of the choice of law provision in the LMA Agreement, which states that it shall be "governed by and interpreted under federal law and, to the extent not preempted, the internal laws of the State of New Jersey…" (Ex. B, § 12, p. 12, 2d ¶.)  For purposes of his motion, Dexter is not seeking application or interpretation of the LMA Agreement, and therefore its choice of law provision is not relevant here.  The arbitration agreement Dexter is seeking to enforce is the one in the Form U-4, which would have been executed in the context of Dexter's employment at MLPFS in Manhattan.  It is this contract upon which the choice of law analysis should be made.

   A federal court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice of law. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).  Under New York law, the choice of law analysis for a contract action involves the court's evaluation of the "center of gravity" or "grouping of contacts", with the purpose of establishing which state has "the most significant relationship to the transaction and the parties." *Id.* at 394, *citing Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,* 84 N.Y.2d 309, 318 (1994) (*quoting Restatement (Second) of Conflict of Laws* § 188[1] ).  In this case, Dexter contracted to work for MLPFS at its principal place of business in New York, and there is no indication any of the transactions and occurrences in this case took place outside New York.  For these reasons, New York law should apply. *See Arakelian v. Omnicare, Inc.*, 735 F.Supp.2d 22, 38

(S.D.N.Y. 2010) (with respect to employment contracts, "the matters of performance and breach are to be determined by the law of the place of performance, or, in the alternative, by the law of the state having the most significant contacts with the matter in dispute"), citing *Tischmann v. ITT/Sheraton Corp.,* 882 F.Supp. 1358, 1366 (S.D.N.Y. 1995) (quoting *Frishberg v. Esprit de Corp.,* 778 F.Supp. 793, 801 (S.D.N.Y. 1991)).   Nevertheless, as shown below, Dexter's agency and estoppel arguments also fail under New Jersey law.

To support his arguments under New Jersey law, Dexter cites the decision in *Epix Holdings Corp. v. Marsh & McLennan Cos.,* 410 N.J. Super. 453 (App. Div. 2009). In the *Epix* case, the New Jersey Appellate Division stated the limited circumstances where New Jersey courts will compel non-signatories to arbitrate on grounds of estoppel, as follows:

> In *Angrisani, supra,* although we cited the equally controlling principle that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," 402 N.J.Super. at 143, 952 A.2d 1140, we nevertheless acknowledged those cases in which arbitration was compelled where a non-signatory to the contract is closely aligned to a contracting party, such as a parent or successor corporation, *id.* at 154, 952 A.2d 1140, or enjoys a principal-agent relationship therewith. *Alfano, supra,* 393 N.J.Super. at 569, 925 A.2d 22. As to the latter, in *Alfano,* we required arbitration of an investor's claim against Deutsche Bank AG (DB) and its subsidiary, Deutsche Bank Securities, Inc. (DBSI), pursuant to an arbitration clause in a Customer Account Agreement between the investor and DBSI, on the basis that DBSI was acting as DB's agent and broker in carrying out the transactions with its customer. *Id.* at 569–70, 925 A.2d 22.
>
> In other cases, courts have compelled arbitration of claims against a non-signatory who is either a parent or successor corporation to a signatory party to an agreement containing an arbitra-

tion clause. *See, e.g., Sunkist Soft Drinks v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir.1993), *cert. denied*, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994) (holding that where the original signatory to a license agreement was later acquired and became a part of the parent corporation and there was a nexus between the plaintiff's claims and the license agreement, the plaintiff was equitably estopped from avoiding arbitration with the parent corporation); *Singer v. Commodities Corp.*, 292 N.J.Super. 391, 411–15, 678 A.2d 1165 (App.Div.1996) (holding that a securities broker who signed an employment agreement under which he was required to submit any employment-related dispute could be compelled to arbitrate an employment-related claim against a successor employer (the parent corporation of the original employer) which had not been a signatory to the agreement containing the arbitration provision).

In yet other cases, courts have concluded that a non-signatory may compel arbitration where the estopped plaintiff either specifically pleaded that the non-signatory and signatories conspired together, *Amato v. KPMG, LLP*, 433 F.Supp.2d 460, 485–87 (M.D.Pa.2006), *vacated in part on other grounds*, No. 06cv39, 2006 WL 2376245, 2006 U.S. Dist. Lexis 57091, (M.D.Pa. Aug. 14, 2006), or otherwise treated the non-signatory affiliate of a signatory "as if it were a signatory." *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280 (2d Cir.2003). *See also Smith/Enron Cogeneration Ltd. P'ship, Inc., supra*, 198 F.3d at 98 (holding that the party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees "as a single unit" in its complaint in a related lawsuit).

410 N.J. Super. at 466-67.

None of the above circumstances applies here.  MLPFS was not an agent for BANA and did not act to benefit BANA when it entered into the Employment Agreement with Dexter and agreed to arbitrate disputes before FINRA.  Indeed, MLPFS was not affiliated with BANA when the Employment Agreement was signed.  BANA did not directly benefit from or assume the Employment Agreement.  BANA is also not the

parent or successor entity to MLPFS, and this is not a case where a non-signatory is the party seeking to compel a signatory to arbitrate. Thus, under New Jersey law BANA cannot be estopped to avoid arbitration.[7]

## A. A STAY SHOULD NOT BE GRANTED

While the court has inherent power to stay an action for arbitration when not required to do so by the Federal Arbitration Act, the movant bears a heavy burden to demonstrate the necessity for the stay. *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) (stay should not be granted when the action will be largely or wholly unaffected by resolution of the arbitration); *see also Aukema v. Chesapeake Appalachia*,

---

[7] On pages 4 -5 of the Dexter Memo, Dexter cites other court decisions for support. The facts of these decisions are clearly distinguishable from this case, and the decisions are inapplicable. In *Bruno v. Mark MaGrann Assoc.*, 388 N.J. Super. 539, 548 (App. Div. 2006) a non-signatory subcontractor compelled the signatory homeowner to arbitrate where, unlike this case, the claims were intertwined with the homeowner's arbitration agreement with the general contractor. In *Singer v. Commodities Corp.*, 292 N.J. 391, 411-15 (App. Div. 1996) a broker was compelled to arbitrate an employment dispute with his employer's successor. BANA is not MLPFS's successor. In *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) a non-signatory successor enforced its predecessor's right to arbitrate against a signatory, which is not the case here. In *Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560, 569-70 (App. Div. 2007) a signatory investor was compelled to arbitrate with securities firm's parent on whose behalf the arbitration agreement was made by the signatory's subsidiary. This is not the case here. In *Merrill Lynch Int'l Finance v. Donaldson*, 27 Misc.3d 391, 396 (Sup. Ct. N.Y. Co. 2010), the loan agreement sought to be enforced was, unlike this case, compensation to the employee, and therefore subject to the employee's arbitration agreement with the employer. On page 2 of the Dexter Memo, Dexter references a FINRA news release concerning an arbitration with MLPFS. Attached as Ex. C to this Memorandum is the news release. The FINRA news release concerns a case concerning compensation to MLPFS employees. But as conceded by Dexter, the LMA Agreement was not compensation. It was a personal loan.

*LLC*, 839 F.Supp.2d 555, 558-61 (N.D.N.Y. 2012) (discretionary stay denied where issues differ between arbitration and court action, where non-arbitrating party will not be bound by determination in arbitration, and where judicial economy will be best served by permitting the court action to proceed). As detailed below, under the above authority, Dexter's motion for a stay should be denied.

Contrary to Dexter's argument on page 9 of the Dexter Memo, this action and the FINRA arbitration do not "involve overlapping issues." This action concerns non-payment on the LMA Agreement. To the extent the FINRA arbitration involves the LMA Agreement, it is to address Dexter's borrowing beyond the agreed-upon cap of the line of credit. This action will be unaffected by resolution of the FINRA arbitration and vice versa.

Dexter also argues for the stay to conserve the resources of the parties and the Court. (Dexter Memo, p. 9.) But a stay here would not save any resources. The issue to be litigated here will not be litigated in the arbitration. Specifically, resolution of the FINRA arbitration will not provide BANA with a money judgment for nonpayment of the indebtedness owed. This action would have to be litigated following the arbitration. The requested stay would only serve to delay BANA's entitlement to a money judgment. Thus, contrary to Dexter's argument a stay of this action would cause prejudice to BANA. (Dexter Memo, p. 9.) It would disadvantage BANA as against other creditors by indefinitely delaying the money judgment.

While Dexter has yet to serve an answer, he has not indicated a defense to the action in his filings to date. However, no discovery is anticipated here. This action

16

is likely to be resolved expeditiously by summary judgment. Thus, the resources to be expended in the action will be minimal.

Dexter also argues for the stay in the interest of justice. (Dexter Memo, p. 9.) Dexter claims he would suffer "severe harm" if the stay is granted. (*Id.*) But he provides no details to support this assertion. In his Declaration, Dexter indicates he faces a "perilous financial situation" if this action proceeds to judgment. (Dexter Dec., ¶ 29.) But Dexter does not argue for a stay on this basis, and accordingly provides no legal authority for a stay on this basis. Instead, Dexter relies on six court decisions cited in the Dexter Memo on pages 8 - 9. As shown below, the cited cases are all readily distinguishable from this case and they do not support Dexter's motion.

In *Freeman v. Complex Computing Co.*, 931 F.Supp. 1115, 1124 (S.D.N.Y. 1996), this Court granted a stay of the court action as against one party while other defendants were compelled to arbitrate. Plaintiff's claims against the non-arbitrating defendant were all derivative of the claims to be arbitrated. If plaintiff could not recover in arbitration, there would be no case against the non-arbitrating defendant. This scenario is not present here. The resolution of the FINRA arbitration will have no bearing on the resolution of this action, and vice versa.

In *Worldcrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997), the action as against a non-arbitrating defendant was stayed because its determination might have preclusive effect on matters being arbitrated. This is not the case here. Dexter's liability on the LMA Agreement, which has not been disputed, will have no preclusive effect on the FINRA arbitration.

17

In *Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.*, 475 F.Supp. 1282 (E.D.N.Y. 1979), the court compelled arbitration of some claims and stayed the action as to other claims between the same parties. The court determined the arbitration would clarify and simplify remaining issues in the court action. This scenario is not present here. There is nothing to be determined in the arbitration which will clarify or simplify the issue of nonpayment on the LMA Agreement to be determined in this action, and BANA is not a party to the FINRA arbitration.

In *Maritima De Ecologia, S.A. DE C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744, at 1786 (S.D.N.Y.), a stay was granted for non-arbitrable claims while the same parties arbitrated other claims. The relief was granted because the outcome of the arbitration would have a "significant bearing" on the action. *Id.* Again, the FINRA arbitration here will have no bearing on this court action and vice versa.

In *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23 (1983), the Court noted that where a party may be compelled to resolve a liability claim in arbitration and the directly related indemnification claim in court, the court may stay the indemnification case pending determination of liability. Again, the FINRA arbitration here will have no bearing on this action.

In *Goldstein v. Time Warner New York City Cable Group*, 3 F.Supp.2d 423, 438-39 (S.D.N.Y. 1998), the court stayed the action pending a related appeal before the D.C. Circuit Court of Appeals to avoid piecemeal litigation and where the appellate decision would guide the trial court on resolving a key issue in the case. This is not the situation here.

18

For the reasons stated, Dexter's request for a stay should be denied.

## Conclusion

For the foregoing reasons, it is respectfully requested that defendant's motion be granted in its entirety.

Dated: New York, New York
      September 14, 2012

                JOEL A. SIEGEL (JS-2974)

                Attorney for Plaintiff
                217 Broadway, Suite 707
                New York, NY 10007
                Tel: (212) 233-6900
                Fax: (212) 962-5037
                jasnycesq@aol.com

# INDEX TO EXHIBITS

<u>EXHIBITS TO PLAINTIFF'S MEMORANDUM OF LAW</u>

Exhibit A – FINRA Form U-4 (May 2009)

Exhibit B – FINRA Rules 13200 and 13100

Exhibit C – FINRA News Release (January 25, 2012)


EXHIBITS TO SUPPORTING DECLARATION OF
<u>EDWARD M. HAN, DATED SEPTEMBER 13, 2012</u>

Exhibit A – Loan Application

Exhibit B – Loan Management Account Agreement

Exhibit C – Burton's Pledgor Application

Exhibit D – Rider

Exhibit E – Demand For Payment